**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**BRANDY MCKAY**                                      **CIVIL ACTION**

**VERSUS**                                            **NO. 21-2304**

**LAMAR DAVIS et al.**                                **SECTION: "G"(2)**


**ORDER AND REASONS**

In this litigation, Plaintiff Brandy McKay ("Plaintiff") bring claims individually and on behalf of her minor child ("P.M.") arising out of the suicide of her deceased husband, August McKay ("McKay"), against Defendants Lamar Davis, Heath Guillotte, Brad Cook, Craig Rhodes, Chad Lacoste, Heath Miller, Rohn Bordelon, Justin Rice, and David Lacroix (collectively, "Defendants").[1] Pending before the Court is Defendants' "Motion to Dismiss or, in the Alternative, for More Definite Statement."[2] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part, denies it in part, and grants Plaintiff leave to file an Amended Complaint.

## I. Background

### A.    *Factual Background*

Plaintiff alleges that in December of 2020, the Louisiana State Police ("LSP") Narcotics Division began an investigation into allegations that LSP Senior Trooper August McKay was using fraudulent prescriptions to obtain controlled substances from a pharmacy in Franklinton,

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 12.

1

Louisiana.[3] Plaintiff alleges that this investigation was assigned to LSP Sergeant Justin Rice ("Rice"), who worked under the supervision of Captains Heath Guillotte ("Guillotte") and Brad Cook ("Cook"), as well as Lieutenants Craig Rhodes ("Rhodes") and Chad Lacoste ("Lacoste").[4] Furthermore, Sergeants Heath Miller ("Miller") and Rohn Bordelon ("Bordelon"), as well as Trooper David Lacroix ("Lacroix") assisted with the investigation.[5] Plaintiff further asserts that Randy Hidalgo ("Hidalgo"), Robert Bennet ("Bennet"), Michael Garner ("Garner"), Stefan Montgomery ("Montgomery"), and William Ellis Simpson ("Simpson") also assisted with the investigation.[6]

Plaintiff alleges that on December 29, 2020, Rice applied for and obtained a search warrant from a judge in the 22nd Judicial District Court to search McKay's residence for the following materials:

> Any and all computers or electronic storage media devices and printers or software that can be used to produce or manufacture fraudulent computer-generated prescriptions. Any paper documents, paper prescriptions, pharmacy receipts, and physicians' documents or receipts. Any prescriptions pill bottles or Schedule II hydrocodone pill prescription narcotics.[7]

Plaintiff alleges that on December 30, 2020, Cook, Rhodes, Lacoste, Rice, Miller, Bordelon, Lacroix, Hidalgo, Bennet, Garner, Montgomery, and Simpson met to discuss the execution of the search warrant on McKay's residence.[8] Plaintiff alleges that some of the individuals assigned to

---

[3] Rec. Doc. 1 at 6.

[4] *Id.*

[5] *Id.*

[6] *Id*.

[7] *Id*. at 6–7.

[8] *Id.* at 7.

execute the search warrant were intimately acquainted with McKay, as well as with Plaintiff and their minor child, P.M.[9] Plaintiff also alleges that Defendants were aware that McKay was in a "very vulnerable and unpredictable emotional state due to issues unrelated to this investigation, but directly related to his immediate employment with LSP."[10] Plaintiff alleges that Defendants were aware that McKay had recently been released from the hospital for a stress related illness, and that the execution of a search warrant would add to this stress.[11]

Plaintiff also alleges that Defendants knew that McKay had firearms in the residence, and that Defendants considered that this posed a substantial risk of harm.[12] Plaintiff further alleges that Defendants knew that the risk of loss or destruction of evidence was low, and that it was common to detain suspects away from their residence before executing a search warrant in order to prevent access to firearms.[13]

Plaintiff alleges that Defendants "planned to confront McKay inside of his residence without considering or implementing any alternative and readily available options which would easily and effectively avoid the confrontation while still effectively executing the search warrant and minimizing the obvious risk of substantial harm to any individual(s)."[14] Plaintiff avers that, if McKay armed himself, Defendants' plan was to evacuate the residence, form a perimeter around

---

[9] *Id.*

[10] *Id*. at 8.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 9.

the residence, and rely on Rhodes' experience in crisis negotiation to address the situation.[15] Plaintiff alleges that Defendants' plan "did not consider or address the safety concerns of any other family members or individuals who may be president in the residence."[16]

Plaintiff alleges that the LSP developed a plan to have Bordelon and Lacroix arrive at the house first to keep McKay from "panicking" during the execution of the search warrant, and "the remaining LSP personnel would be staged at a local fire department less than a mile away, awaiting the call to physically execute the search."[17] Plaintiff avers that at 11:00 AM on December 30, 2020, Bordelon and Lacroix arrived at the residence, where they were told by McKay's minor child, P.M., that McKay had left to pick up breakfast.[18] Plaintiff alleges that she invited them inside where Lacroix and Bordelon learned that a second minor, a friend of P.M., was also in the residence.[19] Plaintiff avers that Bordelon and Lacroix were alerted that McKay was seen driving toward the house, but "no attempts were made to stop or detain McKay before his arrival at the residence" or to otherwise deviate from the original plan.[20]

Plaintiff alleges that McKay arrived back at his residence, where he was met by Bordelon and Lacroix in his living room.[21] Plaintiff avers that Bordelon informed McKay that he was being

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 10.

[19] *Id.*

[20] *Id.*

[21] *Id.*

4

placed on administrative leave, and Bordelon and Lacroix escorted McKay out of the residence.[22] According to the Complaint, Bordelon then informed McKay that LSP intended to execute a search warrant for his residence, and Bordelon asked McKay if his wife and the children could leave the residence.[23] Around this time, Cook and Lacoste also arrived at the residence.[24] Plaintiff avers that McKay was then escorted back into the residence by Bordelon and Lacroix, while Cook and Lacoste remained outside.[25] Plaintiff alleges that Lacroix escorted McKay into the master bedroom, where Lacroix confiscated two handguns.[26] According to the Complaint, McKay then entered the master bathroom, and Lacroix "followed him and stood outside the open door and watched as McKay used the restroom."[27]

Plaintiff alleges that she and Bordelon then entered the master bedroom, and Plaintiff began to inquire as to what was occurring in the residence.[28] During this inquiry, Plaintiff alleges that McKay again walked into the master bedroom closet, where he accessed and loaded his LSP department issued Bushmaster .223 semi-automatic rifle.[29] According to the Complaint, Lacroix said "Gus, no, what are you doing?"[30] Then, Bordelon told Lacroix to "back out, back out."[31]

---

[22] *Id.*

[23] *Id.* at 11.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 12.

[29] *Id.*

[30] *Id.*

[31] *Id.*

Plaintiff alleges that the officers all exited the residence, leaving Plaintiff, P.M., and the second child alone in the residence with McKay.[32] Plaintiff avers that she ran into the closet and attempted to take the rifle from McKay. Plaintiff alleges that she "briefly let go of the weapon at which time McKay fatally shot himself."[33]

**B.    *Procedural Background***

On December 15, 2021, Plaintiff filed a Complaint against Defendants in this Court.[34] Plaintiff brings claims under 42 U.S.C. § 1983 for alleged violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.[35] Plaintiff also brings claims under Louisiana state law for negligence, strict liability, wrongful death, a survival action, and bystander damages.[36] Thereafter, Defendants filed the instant "Motion to Dismiss or, in the Alternative, for More Definite Statement."[37] Plaintiff opposes the motion.[38] With leave of Court, Defendants filed a reply brief in further support of the motion.[39]

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at 13–14.

[36] *Id.* at 15–16.

[37] Rec. Doc. 12.

[38] Rec. Doc. 16.

[39] Rec. Doc. 22.

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of the Motion to Dismiss*

Defendants move the Court to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[40] Alternatively, Defendants argue that Plaintiff should be required to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[41] Defendants point out that the Complaint alleges that only three defendants—Lacoste, Bordelon, and Lacroix—had direct contact with McKay on the day he committed suicide.[42] As to the conduct of Lacoste, Bordelon, and Lacroix, Defendants assert that "Plaintiff alleges no wrongful conduct whatsoever except ostensibly for failing to prevent McKay from seizing a rifle in his own home and fatally shooting himself."[43] Defendants argue that the Complaint is a "shotgun" pleading that impermissibly relies on legal conclusions that bear no relation to the facts.[44] Defendants argue that the claims must be dismissed because Plaintiff does not specify a wrongful act committed by any defendant or even distinguish between the various Defendants.[45]

Defendants assert that Plaintiff's claims should be dismissed for five reasons: (1) the Fourth Amendment imposes no free-standing suicide prevention duty; (2) the Eighth Amendment does not apply because McKay was not convicted or arrested; (3) the Fourteenth Amendment does not apply because McKay was not a pretrial detainee; (4) Defendants are entitled to qualified immunity

---

[40] Rec. Doc. 12-1 at 1–2.

[41] *Id.* at 2.

[42] *Id.* at 3.

[43] *Id.* at 4.

[44] *Id.* at 6.

[45] *Id.* at 7.

7

because they acted reasonably under the circumstances created by McKay; and (5) Plaintiff alleges no conduct that could be considered wrongful under Louisiana law.[46]

First, Defendants argue that Plaintiff does not allege a Fourth Amendment violation because the Fourth Amendment does not impose a duty on police officers to prevent suicide of search warrant recipients.[47] Defendants assert that Plaintiff alleges no unreasonable search or seizure, no arrest, and no lack of probable cause for the search warrant.[48] Defendants point out that McKay acted voluntarily, and Plaintiff does not allege that Defendants somehow inducted or caused McKay's actions.[49] Defendants argue that they had "no broad, freestanding legal duty to prevent McKay's suicide."[50] Therefore, Defendants assert that they cannot be held liable under the Fourth Amendment.[51]

Second, Defendants assert that the Eighth Amendment does not apply because McKay was not convicted or arrested.[52] In support of this argument, Defendants cite Fifth Circuit caselaw holding that the Eighth Amendment only applies to convicted prisoners.[53]

---

[46] *Id.* at 4.

[47] *Id.* at 8 (citing *Bentz v. City of New York*, 249 F.Supp.3d 640, 643 (E.D.N.Y. 2017)).

[48] *Id.* at 9.

[49] *Id.*

[50] *Id.* (citing *Simon v. Theriot*, 2013-562 (La. App. 3 Cir. 12/11/13); 127 So. 3d 1057).

[51] *Id.* at 10.

[52] *Id.*

[53] *Id.* (citing *Johnson v. City of Dallas*, 61 F,3d 442, 444 (5th Cir. 1995); *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019)).

Third, Defendants argue that the Fourteenth Amendment does not apply because McKay was not a pretrial detainee.[54] In support of this argument, Defendants cite Fifth Circuit caselaw holding that the Fourteenth Amendment only applies to pretrial detainees.[55] Defendants acknowledge that Plaintiff makes an unfounded assertion that McKay was subjected to "wrongful and illegal detention."[56] Defendants assert that the Court should reject such a conclusory allegation because Plaintiff also alleges that Defendants failed to take McKay into custody.[57] In addition, even assuming that McKay was arrested, Defendants assert that Plaintiff has not alleged facts to show deliberate indifference on the part of the officers.[58] Defendants contend that Plaintiff does not allege that any individual defendant knew that McKay was at risk of suicide.[59] For these reasons, Defendants argue that the Fourteenth Amendment claim should be dismissed.[60]

Fourth, Defendants assert that they are entitled to qualified immunity because they acted reasonably under the circumstances created by McKay.[61] Defendants point out that Lacoste, Bordelon, and Lacroix were the only Defendants in McKay's home.[62] Defendants assert that it is "inappropriate for Plaintiff to disregard the interests of [] Bordelon and [] Lacroix in avoiding

---

[54] *Id.* at 11.

[55] *Id.* (citing *Baughman*, 935 F.3d at 306).

[56] *Id.*

[57] *Id.*

[58] *Id.* at 12.

[59] *Id.*

[60] *Id.* at 13.

[61] *Id.* at 16.

[62] *Id.*

injury."[63] Defendants argue that they are entitled to qualified immunity because they acted reasonably under the circumstances.[64]

Fifth, Defendants assert that Plaintiff alleges no conduct that could be considered wrongful under Louisiana law.[65] Defendants argue that they cannot be held liable for negligence under Louisiana Civil Code article 2315 because Plaintiff has not alleged a duty existed or how any particular defendant breached a duty.[66] Similarly, Defendants contend that Plaintiff's claim for strict liability under Louisiana Civil Code article 2317 should be dismissed because Plaintiff does not allege any specific facts to support duty, breach, or causation.[67] Defendants argue that Plaintiff's claims for wrongful death, a survival action, and bystander liability necessarily must also be dismissed because Plaintiff does not allege any actionable underlying tortious conduct.[68] Alternatively, Defendants assert that Plaintiff should be required to file a more definite statement alleging with specificity what persons allegedly violated what legal duties.[69]

**B.      *Plaintiff's Arguments in Opposition to the Motion to Dismiss***

Plaintiff opposes the motion and argues that the factual allegations contained in the Complaint meet the criteria of Federal Rule of Civil Procedure 8.[70] Alternatively, if the Court

---

[63] *Id.* at 17.

[64] *Id.*

[65] *Id.* at 18.

[66] *Id.* at 18–19.

[67] *Id.* at 19–20.

[68] *Id.* at 20–22.

[69] *Id.* at 23.

[70] Rec. Doc. 16 at 1.

determines that the Complaint contains any deficiencies, Plaintiff requests that a curative amendment be permitted.[71]

First, Plaintiff argues that the Complaint alleges facts and plausible claims, and it is not an improper shotgun pleading.[72] Plaintiff asserts that many of the facts alleged in the Complaint were obtained from a LSP report about the incident.[73] Plaintiff contends that "almost all of the named Defendants participated in the pre-operational briefing prior to executing the search warrant."[74] Plaintiff asserts the Complaint contains enough factual matter to raise a reasonable expectation that discovery will reveal evidence to each element of the asserted claim.[75]

Second, Plaintiff argues that the Complaint adequately alleges a Fourth Amendment violation.[76] Plaintiff contends that the cases cited by Defendants are distinguishable because Defendants knew that McKay was in possession of firearms, which had been issued to him by LSP.[77] Plaintiff asserts that there are allegations suggesting that McKay was in custody at the time the search warrant was executed because the officers told McKay that his wife and daughter needed to leave the home, and the officers escorted McKay into the bathroom and did not allow him to shut the door.[78] Plaintiff asserts that these facts show that McKay's liberty and freedom of

---

[71] *Id.*

[72] *Id.* at 4.

[73] *Id.* at 5.

[74] *Id.*

[75] *Id.* at 6.

[76] *Id.*

[77] *Id.*

[78] *Id.* at 7–8.

movement were restrained, and Plaintiff argues that a reasonable person would not have felt free to leave.[79]

Third, Plaintiff contends that the Complaint adequately alleges a Fourteenth Amendment violation.[80] Plaintiff acknowledges that Fourteenth Amendment claims apply to pretrial detainees who are in custody.[81] Plaintiff argues that Defendants did in fact seize McKay and asserted their authority over him, resulting in his arrest.[82] Plaintiff also asserts that she has alleged facts to support deliberate indifference.[83] Plaintiff contends that Defendants "knew that McKay had been in a very vulnerable and unpredictable emotional state due to issues regarding the LSP and a greater level of stress would suddenly be brought upon McKay once he learned of the criminal search warrant of his residence."[84] Plaintiff also points out that Defendants knew that McKay possessed and had access to firearms issued by the LSP.[85] Plaintiff argues that these facts clearly illustrate Defendants' subjective knowledge that McKay was a suicide risk.[86]

Fourth, Plaintiff contends that Defendants are not entitled to qualified immunity.[87] Plaintiff asserts that the Complaint illustrates that Defendants violated McKay's Fourth and Fourteenth

---

[79] *Id.* at 8.

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.* at 9.

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Id.* at 10.

Amendment rights.[88] Furthermore, Plaintiff argues that reasonable police officers would not have acted or failed to act as the Defendants did in this case.[89] Thus, Plaintiff asserts that Defendants are not entitled to qualified immunity. [90]

Finally, Plaintiff argues that the Complaint states several valid causes of action under Louisiana law.[91] Plaintiff asserts that "Defendants breached their duty when they failed to appropriately access and re-evaluate the information which they possessed."[92] Furthermore, Plaintiff contends that "Defendants also failed to take necessary actions to properly secure the residence to be searched, which they controlled, as well as failing to take necessary and appropriate actions to prevent the decedent from arming himself."[93] Plaintiff acknowledges that she does not know what role each specific Defendant played in this incident, but she asserts that she should be allowed to further develop this information through discovery.[94]

## C.   *Defendants' Arguments in Further Support of the Motion to Dismiss*

As an initial matter, Defendants point out that Plaintiff seeks to invoke a "report" and "taped statement" provided by the LSP.[95] However, Defendants note that neither item was attached

---

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] Rec. Doc. 22 at 1.

to the opposition brief or the Complaint.[96] Defendants assert that the Court should not consider arguments based on documents that are outside the Complaint.[97] Additionally, Defendants note that Plaintiff did not respond to their argument regarding the Eighth Amendment claim, and therefore Plaintiff has abandoned that purported claim.[98]

Defendants argue that Plaintiff has not alleged a seizure as required by the Fourth Amendment.[99] Defendants assert that even if they "knew McKay might pose a suicide risk, they had no absolute duty to prevent his suicide."[100] Defendants point to Plaintiff's allegation that two weapons were confiscated, and they contend that they "had no duty to endanger themselves and others once McKay grabbed yet another weapon."[101] Defendants contend that Plaintiff's argument that McKay was somehow "seized" does not make sense, considering that "the gist of Plaintiff's Complaint is that Defendants did not restrain McKay when they should have."[102] Moreover, Defendants assert that Plaintiff's argument that McKay was arrested is legally incorrect because no seizure of McKay occurred.[103]

---

[96] *Id.*

[97] *Id.* at 2.

[98] *Id.* at 3.

[99] *Id.* at 4.

[100] *Id.*

[101] *Id.* at 4–5.

[102] *Id.* at 5.

[103] *Id.* at 5–6.

Defendants argue that Plaintiff's Fourteenth Amendment claim fails for the same reason, because McKay was not a "pretrial detainee."[104] Moreover, Defendants assert that Plaintiff does not allege either: (1) that Defendants knew McKay might try to commit suicide; or (2) that Defendants knew McKay showed deliberate indifference to a suicide risk.[105] Additionally, Defendants assert that Plaintiff's unsupported contentions are insufficient to defeat Defendants' assertion of qualified immunity.[106] Finally, Defendants contend that Plaintiff's state law claims must be dismissed because they are devoid of specificity and of any factual basis.[107]

### III. Legal Standards

#### A.      *Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[108] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[109] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[110] "Factual allegations must be enough to raise a right to relief above the speculative level."[111] A claim is facially plausible when the plaintiff has pleaded facts that allow

---

[104] *Id.* at 6.

[105] *Id.* at 7.

[106] *Id.* at 9.

[107] *Id.* at 7–8.

[108] Fed. R. Civ. P. 12(b)(6).

[109] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[110] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[111] *Twombly*, 550 U.S. at 555.

the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[112]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[113] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[114] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[115] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[116] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[117] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[118] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[119] If factual allegations are insufficient to raise a right to relief

---

[112] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[113] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[114] *Iqbal*, 556 U.S. at 678–79.

[115] *Id.* at 679.

[116] *Id.* at 678.

[117] *Id.*

[118] *Id.*

[119] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[120]

## B.    *Qualified Immunity*

To plead a Section 1983 claim, Plaintiff is required to allege facts demonstrating that (1) the defendant violated the Constitution or federal law, and (2) that the defendant was acting under the color of state law while doing so.[121]

The doctrine of qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[122] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[123] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[124] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[125]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[126] Part one asks the following question: "Taken in

---

[120] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[121] *See West v. Atkins*, 487 U.S. 42, 48 (1988) (internal citations omitted).

[122] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations omitted).

[123] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal citation omitted).

[124] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (internal citation omitted).

[125] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (internal citation omitted).

[126] 533 U.S. 194 (2001).

the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[127] Part two inquires into whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[128] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[129]

"If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"[130] Officials "who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[131]

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[132] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged

---

[127] *Id.* at 201.

[128] *Id.* at 202 (internal citation omitted).

[129] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

[130] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

[131] *Collins*, 382 F.3d at 537 (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001)).

[132] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995)).

and that defeat a qualified immunity defense with equal specificity."[133] After the district court determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule on the immunity defense without further clarification of the fact,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[134]

## IV. Analysis

Defendants move the Court to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[135] Alternatively, Defendants argue that Plaintiff should be required to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[136] Defendants assert that Plaintiff's claims should be dismissed for five reasons: (1) the Fourth Amendment imposes no free-standing suicide prevention duty; (2) the Eighth Amendment does not apply because McKay was not convicted or arrested; (3) the Fourteenth Amendment does not apply because McKay was not a pretrial detainee; (4) Defendants are entitled to qualified immunity because they acted reasonably under the circumstances created by McKay; and (5) Plaintiff alleges no conduct that could be considered wrongful under Louisiana law.[137] As an initial matter, the Court notes that Plaintiff does not oppose the motion to the extent it seeks dismissal of Section 1983 claim brought under the Eighth Amendment.[138] Accordingly, the Court grants the motion to the extent it seeks dismissal of that claim and proceeds to consider Defendants other arguments.

---

[133] *Id.* at 645.

[134] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987)).

[135] Rec. Doc. 12-1 at 1–2.

[136] *Id.* at 2.

[137] *Id.* at 4.

[138] *See* Rec. Doc. 16.

**A.**     ***Whether Plaintiff Has Stated a Section 1983 Claim Under the Fourth Amendment***

Defendants argue that Plaintiff does not allege a Fourth Amendment violation because the Fourth Amendment does not impose a duty on police officers to prevent suicide of search warrant recipients.[139] Defendants assert that Plaintiff alleges no unreasonable search or seizure, no arrest, and no lack of probable cause for the search warrant.[140] Defendants point out that McKay acted voluntarily, and Plaintiff does not allege that Defendants somehow inducted or caused McKay's actions.[141] In opposition, Plaintiff asserts that there are allegations suggesting that McKay was in custody at the time the search warrant was executed because the officers told McKay that his wife and daughter needed to leave the home, and the officers escorted McKay into the bathroom and did not allow him to shut the door.[142] Plaintiff asserts that these facts show that McKay's liberty and freedom of movement were restrained, and Plaintiff argues that a reasonable person would not have felt free to leave.[143]

The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." In the instant case, it does not appear that Plaintiff  contests the validity of the search warrant executed on McKay's residence. Plaintiff pleads no facts to show that the

---

[139] Rec. Doc. 12-1 at 8.

[140] *Id.* at 9.

[141] *Id.*

[142] Rec. Doc. 16 at 7–8.

[143] *Id.* at 8.

judge lacked probable cause to issue the warrant.[144] Instead, Plaintiff asserts that Defendants unreasonably "seized" McKay during the execution of the search.

"A person is 'seized' for Fourth Amendment purposes 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'"[145] A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave."[146] The reasonable-person test is objective and ensures "that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual" claiming a violation.[147]

"Physical force is not required to effect a seizure; however, absent physical force, 'submission to the assertion of authority' is necessary."[148]

> Thus, seizures have been found when an encounter is precipitated by a show of authority, such as when a siren was used to pull a motorist over; when a motorist stepped out of his camper, with his hands up, in response to an officer's knock on the camper door; or when under other circumstances it was "apparent . . . that the individual was not free to ignore the officer and proceed on his way."[149]

In *McLin v. Ard*, the Fifth Circuit held that an arrestee, who alleged that he voluntarily surrendered to law enforcement officers after learning that three arrest warrants had been issued, sufficiently

---

[144] The Complaint alleges only that Defendants violated "[t]he right of the Decedent, AUGUST MCKAY, to be secure in his person against unreasonable searches and seizures and to freedom from arrest, except on probable cause, supported by oath or affirmation, secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States." Rec. Doc. 1 at 13. If Plaintiff does in fact contend that there was not probable cause for the search, such an allegation must be specifically alleged in the Amended Complaint.

[145] *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)).

[146] *Id.* (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

[147] *Id.* (quoting *Chesternut*, 486 U.S. at 574).

[148] *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

[149] *Id.* (quoting *United States v. Elmore*, 595 F.2d 1036, 1041 (5th Cir. 1979)).

alleged that he had been seized for Fourth Amendment purposes.[150] The Fifth Circuit reasoned that the issuance of the arrest warrants was a "show of authority," and no reasonable person would believe he was free to leave after the police officers accepted the surrender "by exercising authority consistent with th[e] warrants."[151]

Plaintiff relies on *McLin* to argue that a reasonable person in McKay's situation would not have believed that he was free to leave. Specifically, Plaintiff points to the allegations that the officers told McKay that his wife and daughter needed to leave the home, and the officers escorted McKay into the bathroom and did not allow him to shut the door.[152] Accepting these facts as true, a reasonable factfinder could find that McKay's individual freedom of movement was restrained. A reasonable person may not have believed that he was free to leave under these circumstances.[153]

Assuming that McKay was in fact seized, Plaintiff has not demonstrated how such a seizure would violate the Fourth Amendment. The Supreme Court has recognized that law enforcement officers may detain the occupant of a residence where a criminal search warrant is being executed.[154] "Consistent with the touchstone of the Fourth Amendment, however, the scope

---

[150] *Id.* at 693–94.

[151] *Id.* at 693.

[152] Rec. Doc. 16 at 7–8.

[153] Defendants rely on *Bentz v. City of New York*, a case decided by a judge in the Eastern District of New York. That case involved execution of an environmental warrant. *Bentz*, 249 F.Supp.3d at 643. The district judge held that the plaintiff had not stated a claim under the Fourth Amendment because the decedent "was never in custody, was not seized, and the search pursuant to a duly issued warrant was not unlawful." *Id.* Although this not binding authority, it is consistent with the Supreme Court and Fifth Circuit authority discussed above addressing "seizures" under the Fourth Amendment. Defendants also rely on *Simon v. Theriot*, a case decided by the Louisiana Third Circuit Court of Appeal. In that case, the appellate court affirmed a district court opinion holding that law enforcement officers had no duty to prevent a suicide. *Simon*, 127 So. 3d at 1063. The case does not discuss the Fourth Amendment.

[154] *Michigan v. Summers*, 452 U.S. 692, 704–05 (1981) ("If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is

22

of such detentions must be reasonable."[155] The Supreme Court has explained that "[d]etentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake."[156] Therefore, assuming that McKay was seized, Plaintiff has not demonstrated how such a seizure could be considered unreasonable under the Fourth Amendment.

For these reasons, the Court finds that Plaintiff fails to state a claim upon which relief can be granted under the Fourth Amendment to the United States Constitution. Nevertheless, the Court recognizes that a motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[157] Short of granting a motion to dismiss, a court may grant Plaintiff leave to amend the complaint.[158]

Additionally, Defendants argue that they are entitled to qualified immunity because they acted reasonably under the circumstances. In *Schultea v. Wood*, the Fifth Circuit explained that once a defendant asserts qualified immunity, a district court may order the plaintiff to submit a reply pursuant to Federal Rule of Civil Procedure 7(a)(7) after evaluating the complaint under

---

constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.").

[155] *Okorie v. Crawford*, 921 F.3d 430, 432 (5th Cir. 2019) (citing *Summers*, 452 U.S. at 705, n.21).

[156] *Bailey v. United States*, 568 U.S. 186, 202 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)). In *Bailey*, the Supreme Court held that the *Summers* rule, which allows officers executing a search warrant to detain the occupants of the premises, is spatially constrained and limited to the immediate vicinity of the premises to be searched. *Id.* at 201.

[157] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[158] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

the ordinary pleading standard.[159] Therefore, the Fifth Circuit has generally found that, when faced with a motion to dismiss, a district court ought to allow a plaintiff to file a Rule 7(a)(7) reply before dismissing a case on the basis of qualified immunity.[160] Pursuant to *Schultea*, this reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations."[161] Accordingly, considering this precedent, the Court will deny the motion to dismiss to the extent it seeks dismissal of the Fourth Amendment claims and grant Plaintiff leave to amend the Complaint to allege facts "tailored to an answer pleading the defense of qualified immunity."[162]

## B.   *Whether Plaintiff Has Stated a Section 1983 Claim Under the Fourteenth Amendment*

Similar to the Fourth Amendment argument, Defendants argue that the Fourteenth Amendment does not apply because McKay was not a pretrial detainee.[163] In addition, even assuming that McKay was arrested, Defendants assert that Plaintiff has not alleged facts to show deliberate indifference on the part of the officers.[164] Defendants contend that Plaintiff does not allege that any individual defendant knew that McKay was at risk of suicide.[165] Plaintiff acknowledges that Fourteenth Amendment claims apply to pretrial detainees who are in custody, but argues that Defendants did in fact seize McKay and asserted their authority over him, resulting

---

[159] *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995).

[160] *See Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) ("*Schultea* makes it clear that this two-step process—requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7—is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity.").

[161] *Schultea*, 47 F.3d at 1433.

[162] *Id.*

[163] Rec. Doc. 12-1 at 11.

[164] *Id.* at 12.

[165] *Id.*

in his arrest.[166] Plaintiff also asserts that she has alleged facts to support deliberate indifference.[167] Plaintiff contends that Defendants "knew that McKay had been in a very vulnerable and unpredictable emotional state due to issues regarding the LSP and a greater level of stress would suddenly be brought upon McKay once he learned of the criminal search warrant of his residence."[168]

Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." "[T]he Due Process Clause generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual."[169] However, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."[170] Specifically, the Due Process Clause of the Fourteenth Amendment guarantees a pretrial detainee's rights to medical care and protection from known suicidal tendencies.[171] To bring a claim under the Fourteenth Amendment, a plaintiff must allege that the defendant: (1) actually, subjectively knew of a suicide risk; and (2) responded to that risk with deliberate indifference.[172] In *Hare v. City of Corinth*, the Fifth Circuit held that the Supreme Court's formulation of subjective

---

[166] Rec. Doc. 16 at 8.

[167] *Id.* at 9.

[168] *Id.*

[169] *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989).

[170] *Id.* at 199–200.

[171] *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019) (internal citations omitted).

[172] *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).

deliberate indifference in *Farmer v. Brennan*, which was an Eighth Amendment case, "properly captures the essence of the inquiry as to whether a pretrial detainee has been deprived of his due process rights to medical care and protection from violence" under the Fourteenth Amendment.[173]

As explained by the Supreme Court in *Farmer*, an official cannot be found liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[174] "Deliberate indifference cannot be inferred from a[n] official's mere failure to act reasonably, *i.e.*, it cannot be inferred from negligence alone."[175] "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."[176] "Suicide is an objectively serious harm implicating the state's duty to provide adequate medical care."[177]

Plaintiff argues that McKay was detained because the officers told McKay that his wife and daughter needed to leave the home, and the officers escorted McKay into the bathroom and did not allow him to shut the door.[178] Accepting these facts as true, a reasonable factfinder could find that McKay's individual freedom of movement was restrained. A reasonable person may not

---

[173] *Id.* at 649  (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

[174] *Farmer*, 511 U.S. at 837.

[175] *Lawson v. Dallas County*, 286 F.3d 257, 262–63 (5th Cir. 2002).

[176] *Farmer*, 511 U.S. at 842.

[177] *Arenas v. Calhoun*, 922 F.3d 616, 621 (5th Cir. 2019).

[178] Rec. Doc. 16 at 8.

have believed that he was free to leave under these circumstances.

Assuming that McKay was in fact detained, Plaintiff has not alleged any facts to show deliberate indifference. Plaintiff contends that Defendants "knew that McKay had been in a very vulnerable and unpredictable emotional state due to issues regarding the LSP and a greater level of stress would suddenly be brought upon McKay once he learned of the criminal search warrant of his residence."[179] To show deliberate indifference, Plaintiff must plead facts establishing both that Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that Defendants actually drew the inference.[180] The Complaint's conclusory allegation that Defendants knew McKay was "in a very vulnerable and unpredictable emotional state"[181] is insufficient. The Complaint does not specifically distinguish between the defendants regarding their alleged knowledge of McKay's emotional state so that the Court could evaluate the alleged deliberate indifference of any individual defendant.[182]

For these reasons, the Court finds that Plaintiff fails to state a claim upon which relief can be granted under the Fourteenth Amendment to the United States Constitution. Nevertheless, the Court recognizes that a motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[183] Short of granting a motion to dismiss, a court may grant Plaintiff leave to

---

[179] Rec. Doc. 16 at 9.

[180] *Farmer*, 511 U.S. at 837.

[181] Rec. Doc. 1 at 8.

[182] *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999) ("[E]ach defendant's subjective deliberate indifference, [or lack thereof], must be examined separately."); *see also Tamez v. Manthley*, 589 F.3d 764, 770 (5th Cir. 2009).

[183] *Kaiser Aluminum*, 677 F.2d at 1050.

amend the complaint.[184]

Additionally, Defendants argue that they are entitled to qualified immunity because they acted reasonably under the circumstances. In *Schultea v. Wood*, the Fifth Circuit explained that once a defendant asserts qualified immunity, a district court may order the plaintiff to submit a reply pursuant to Federal Rule of Civil Procedure 7(a)(7) after evaluating the complaint under the ordinary pleading standard.[185] Therefore, the Fifth Circuit has generally found that, when faced with a motion to dismiss, a district court ought to allow a plaintiff to file a Rule 7(a)(7) reply before dismissing a case on the basis of qualified immunity.[186] Pursuant to *Schultea*, this reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations."[187] Accordingly, considering this precedent, the Court will deny the motion to dismiss to the extent it seeks dismissal of the Fourteenth Amendment claims and grant Plaintiff leave to amend the Complaint to allege facts "tailored to an answer pleading the defense of qualified immunity."[188]

## C.   *Whether Plaintiff Has Stated a Claim Under Louisiana Law*

Defendants assert that Plaintiff alleges no conduct that could be considered wrongful under Louisiana law.[189] Defendants argue that they cannot be held liable for negligence under Louisiana Civil Code article 2315 because Plaintiff has not alleged a duty existed or how any particular

---

[184] *See Carroll*, 470 F.3d at 1175 (quoting *Dussouy*, 660 F.2d at 597–98).

[185] *Schultea*, 47 F.3d at 1432.

[186] *See Todd*, 66 F.3d at 320 ("*Schultea* makes it clear that this two-step process—requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7—is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity.").

[187] *Schultea*, 47 F.3d at 1433.

[188] *Id.*

[189] Rec. Doc. 12-1 at 18.

defendant breached a duty.[190] Similarly, Defendants contend that Plaintiff's claim for strict liability under Louisiana Civil Code article 2317 should be dismissed because Plaintiff does not allege any specific facts to support duty, breach, or causation.[191] Defendants argue that Plaintiff's claims for wrongful death, a survival action, and bystander liability necessarily must also be dismissed because Plaintiff does not allege any actionable underlying tortious conduct.[192]

Plaintiff argues that the Complaint states several valid causes of action under Louisiana law.[193] Plaintiff asserts that "Defendants breached their duty when they failed to appropriately access and re-evaluate the information which they possessed."[194] Furthermore, Plaintiff contends that "Defendants also failed to take necessary actions to properly secure the residence to be searched, which they controlled, as well as failing to take necessary and appropriate actions to prevent the decedent from arming himself."[195] Plaintiff acknowledges that she does not know what role each specific Defendant played in this incident, but she asserts that she should be allowed to further develop this information through discovery.[196]

Article 2315 of the Louisiana Civil Code establishes a general cause of action for negligence: "[e]very act whatever of man that causes damage to another obliges him by whose

---

[190] *Id.* at 18–19.

[191] *Id.* at 19–20.

[192] *Id.* at 20–22.

[193] Rec. Doc. 16 at 10.

[194] *Id.*

[195] *Id.*

[196] *Id.*

fault it happened to repair it."[197] In determining whether to impose liability under Article 2315, Louisiana courts employ a duty-risk analysis, whereby a plaintiff must establish the following five elements: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)."[198] "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability."[199]

Under Louisiana Civil Code article 2317, individuals "are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." In 1996, the Louisiana legislature adopted Article 2317.1, which significantly modified Article 2317's imposition of liability by providing in pertinent part that:

> [t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.[200]

The adoption of Article 2317.1 appears to have eliminated the distinction between strict

---

[197] La. Civ. Code. art. 2315.

[198] *Audler v. CBC Innovis Inc.,* 519 F.3d 239, 249 (5th Cir. 2008); *Lemann v. Essen Lane Daiquiris,* 2005–1095 (La. 3/10/06); 923 So. 2d 627, 633; *Long v. State ex rel. Dept. of Transp. and Dev.,* No. 2004–0485 (La. 06/29/2005); 916 So. 2d 87, 101.

[199] *Mathieu v. Imperial Toy Corp.,* 646 So. 2d 318, 321 (La. 1994).

[200] La. Civ. Code art. 2317.1.

liability under Article 2317 and negligence under Article 2315.[201] In 1991, the Louisiana Supreme

Court distinguished between strict liability and negligence as follows:

> In essence, the only difference between the negligence theory of recovery and the strict liability theory of recovery is that the plaintiff need not prove the defendant was aware of the existence of the "defect" under a strict liability theory. Under the negligence theory, it is the defendant's awareness of the dangerous condition of the property that gives rise to a duty to act. Under a strict liability theory, it is the defendant's legal relationship with the property containing a defect that gives rise to the duty. Under both theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant.[202]

After the adoption of Article 2317.1, the Louisiana Supreme Court reiterated that "the

sole distinction between the burden of proof necessary to recover under a negligent action based

on La. Civ. Code arts. [sic] 2315 versus a strict liability action based on La. Civ. Code art. 2317

was that in the former the plaintiff had the additional burden of proving the defendant's scienter,

*i.e.*, that the defendant 'knew or should have known' of the defect."[203] It appears well settled

under Louisiana law that by requiring knowledge or constructive knowledge under Article

2317.1, the Louisiana legislature effectively eliminated strict liability under Article 2317, turning

causes of action arising under Article 2317 into negligence claims.[204] The Louisiana Supreme

Court also analyzes actions arising under Articles 2317 and 2317.1 under the same duty-risk

analysis it used to analyze negligence claims arising under Article 2315.[205]

---

[201] *Dupree v. City of New Orleans*, 1999–3651 (La. 8/31/00); 765 So. 2d 1002, 1007.

[202] *Oster v. Dept. of Trans. & Development*, 582 So. 2d 1285 (La. 1991).

[203] *Dupree*, 765 So. 2d at 1007 (citations omitted).

[204] *See Jackson v. Brumfield*, 2009–2142 (La. App. 1 Cir. 6/11/10); 40 So. 3d 1242, 1243 ("The 1996 amendment enacting [article 2317.1] abolished the concept of strict liability governed by prior interpretation of [article 2317].."); *Dufrene v. Gautreau Family, LLC*, 2007–467 (La. App. 5 Cir. 2/22/08); 980 So. 2d 68, 80; *Ruschel v. St. Amant*, 2011–78 (La. App. 5 Cir. 5/24/11); 66 So. 3d 1149, 1153.

[205] *See Bufkin v. Felipe's Louisiana, LLC*, 2014–288 (La.10/15/14), 171 So. 3d 85.

In the instant motion, Defendants argue that the Complaint does not identify any specific duty that Defendants owed to McKay or how any defendant breached such a duty.[206] In the Complaint, Plaintiff argues that "Defendants breached their duty when they failed to appropriately access and re-evaluate the information which they possessed. Furthermore, the Defendants also failed to take necessary actions to properly secure the residence to be searched, which they controlled, as well as failing to take necessary and appropriate actions to prevent the decedent from arming himself."[207]

In *Simon v. Theriot*, the Louisiana Third Circuit Court of Appeal affirmed a district court opinion holding that law enforcement officers had no duty to prevent a suicide under Louisiana law.[208] However, the Louisiana Supreme Court has recognized that "[g]enerally, a 'police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action.'"[209] The Louisiana Supreme Court observed that police officers are "held to choosing a course of action which is reasonable under the circumstances."[210] Louisiana courts have also recognized that "[a] police officer owes a duty of reasonableness when executing a search warrant."[211]

Plaintiff has alleged a specific duty owed to Plaintiff by Defendants. However, based on

---

[206] Rec. Doc. 12-1 at 19.

[207] Rec. Doc. 1 at 16.

[208] *Simon*, 127 So. 3d at 1063.

[209] *Hardy v. Bowie*, 99–2821 (La. 9/8/99), 744 So. 2d 606, 614 (internal citations omitted).

[210] *Id.*

[211] *Hebert v. Adcock*, 2010-887 (La. App. 3 Cir. 2/2/11); 55 So. 3d 1007, 1013, *writ denied*, 2011-0477 (La. 4/25/11); 62 So. 3d 92 (citing La. Code Crim. P. art. 164; *Coutee v. Am. Druggist Ins. Co. of Cincinnati*, 453 So. 2d 314 (La. App. 3 Cir.), *writ denied*, 458 So. 2d 477 (La. 1984)).

the conclusory allegations raised, the Court cannot determine which individual defendants allegedly breached this duty. Plaintiff acknowledges that she does not know what role each specific Defendant played in this incident, but she asserts that she should be allowed to further develop this information through discovery.[212] However, the Complaint must plead specific facts as to each Defendant. Without more specific allegations regarding the alleged breach of duty, the threadbare recital of Louisiana Civil Code articles is insufficient to state a claim upon which relief can be granted. However, as discussed above, the Court will provide Plaintiff with an opportunity to amend the Complaint to address the aforementioned deficiencies in Plaintiff's state law tort claims.

## V. Conclusion

Based on the foregoing, the Court grants the motion to the extent it seeks dismissal of Plaintiff's Section 1983 claim for alleged violations of the Eighth Amendment. The Court denies the motion in all other respects and grants Plaintiff leave to amend the Complaint to cure the deficiencies noted herein. Accordingly,

**IT IS HEREBY ORDERED** that "Motion to Dismiss or, in the Alternative, for More Definite Statement"[213] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's Section 1983 claim for alleged violations of the Eighth Amendment. The motion is **DENIED WITHOUT PREJUDICE** in all other respects.

---

[212] Rec. Doc. 16 at 10.

[213] Rec. Doc. 12.

33

**IT IS FURTHER ORDERED** that Plaintiff Brandy McKay is granted leave to amend the Complaint within fourteen days of this Order to cure the deficiencies noted, if possible. If Plaintiff fails to amend the Complaint, or if Plaintiff amends the Complaint and the amendments do not cure the deficiencies identified in this Order, Defendants are granted leave to file responsive motions if necessary.

**NEW ORLEANS, LOUISIANA**, this 13th day of September, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

34